## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

KIMBERLY GRAYSON HEBEIN,

        Plaintiff,

        v.                           CAUSE NO.: 3:21-CV-880-TLS-MGG

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

        Defendant.

## OPINION AND ORDER

The Plaintiff Kimberly Grayson Hebein seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income.[1] For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's decision and that there is no basis for remand.

## PROCEDURAL BACKGROUND

The Plaintiff filed an application for supplemental security income on August 20, 2019, alleging disability beginning on March 9, 2009. AR 15, ECF No. 9. The claim was denied initially and on reconsideration, and the Plaintiff requested a hearing, which was held before the ALJ on January 22, 2021. *Id*. At the hearing, the onset date was amended to August 20, 2019. AR 15, 35. On March 18, 2021, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 15–23. The Appeals Council denied review. *Id.* at 1–3. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

---

[1] The Plaintiff identifies as male, prefers to go by Grayson, and uses he/his pronouns. Accordingly, the Court will refer to the Plaintiff in this opinion with he/his pronouns, as did the ALJ. *See* Pl. Br. 1, n. 1, ECF No. 13; AR 15, ECF No. 9.

On November 16, 2021, the Plaintiff filed his Complaint [ECF No. 1] under 42 U.S.C. § 405(g),

seeking reversal of the Commissioner's final decision. This appeal is fully briefed. *See* ECF Nos.

13, 15, 16.

### THE ALJ'S DECISION

For purposes of supplemental security income, a claimant is "disabled . . . if he is unable

to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§ 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a

severe physical or mental impairment that prevents him from doing not only his previous work,

but also any other kind of gainful employment that exists in the national economy, considering

his age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R.

§ 416.920.

The first step is to determine whether the claimant is no longer engaged in substantial

gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not

engaged in substantial gainful activity since August 20, 2019, the application date. AR 18. At

step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R.

§ 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of

seizures, depression, and anxiety. AR 18.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or

equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R.

§ 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with

other impairments, meets or equals a listed impairment, the claimant will be found disabled

without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 18.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb stairs or ramps, stoop, kneel, crouch, or crawl; can never climb ladders, ropes or scaffolds, or balance as the term is used . . . vocationally. No exposure to extreme heat, moving machinery, or unprotected heights. With work that can be learned in 30 days, or less, with simple routine tasks; routine work place changes and simple work related decisions. Is able to remain on task in two-hour increments; occasional interaction with coworkers and supervisors, and no interaction with the general public.

AR 19.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). If the claimant is unable to perform past relevant work, as the ALJ found in this case, AR 22, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because he can perform significant jobs in the national economy of cleaner/housekeeper, mail clerk, and marker. AR 22–23. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

3

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner

commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff argues that the ALJ erred in considering his and his mother's subjective statements; by finding the state agency consultative psychologists' opinions more persuasive than the consultative examiner's opinions; by finding that the Plaintiff did not meet Listings 12.04 or 12.06; and by failing to create an accurate and logical bridge between the evidence and the RFC in relation to his mental impairments. The Court considers each of the Plaintiff's arguments for remand in turn.

**A.     The Plaintiff and His Mother's Subjective Statements**

In determining whether an individual is disabled, the ALJ "consider[s] all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). A "symptom" is "the individual's own description or statement of his or her physical or mental impairment(s)." *Id*. In evaluating those symptoms, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *3. If there is, then the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*. In doing so, the ALJ must assess, among other things, the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain;

and other measures taken to relieve pain or other symptoms. *Id.* at *2, 6, 7–8; 20 C.F.R.

§ 416.929(c)(3).[2]

Courts afford deference to the ALJ's consideration of a plaintiff's subjective symptoms, but an ALJ must still "competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (citing *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)). The Plaintiff argues that the ALJ erred in four ways in considering the Plaintiff's subjective statements and his mother's statements.

First, the Plaintiff contends that the ALJ found the Plaintiff less limited than alleged "almost entirely due to having 'little treatment' for his conditions." Pl. Br. 8, ECF No. 13 (citing AR 20). The Social Security Rulings direct that an ALJ must explore a claimant's reasons for a lack of medical care before drawing a negative inference. SSR 16-3p, 2017 WL 5180304, at *9– 10; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (explaining that "good reasons" for not seeking medical treatment may include "an inability to afford treatment"). As an initial matter, the frequency of treatment was only one of many factors the ALJ discussed in considering the Plaintiff's symptoms, including mental health treatment notes, objective testing, his and his

---

[2] Any new arguments by the Plaintiff in the reply brief are waived because they were not raised in the opening brief, including that the ALJ's credibility determination should not be given deference because the ALJ did not have an opportunity to observe the Plaintiff during the hearing that was held telephonically. *See* Pl. Reply 7; *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998); *Swanson v. Apfel*, No. IP 99-1159-C H/G, 2000 WL 1206587, at *4 (S.D. Ind. Aug. 7, 2000). Although the argument is waived, the Court nevertheless finds that the telephonic hearing would not be grounds for remand. The Plaintiff, who was represented by counsel, agreed on the record to proceeding telephonically, which was requested in light of the then-ongoing COVID-19 pandemic, and has not shown any prejudice from the telephonic hearing. *See* AR 31; *see also Kimberly R.A. v. Comm'r of Soc. Sec.*, No. 4:21-CV-4153, 2022 WL 18599551, at *6 (C.D. Ill. Nov. 28, 2022) (declining to "fault SSA for conducting telephonic hearings so that it could continue to evaluate disability claims during the pandemic," noting that, on the record before the court, the plaintiff had twice agreed on the record to the telephonic proceeding, the telephonic proceedings had revealed no obvious shortcomings, and the plaintiff failed to establish prejudice from those hearings).

mother's reports regarding his seizures, the consultative examiner's two opinions, and the state agency reviewing doctors and psychologists' opinions. *See* AR 20–22. The Plaintiff does not acknowledge these additional factors in the ALJ's consideration of his symptoms.

More importantly, the ALJ properly considered the lack of treatment and explained her reasoning. In noting that "[d]espite the claimant's seizure disorder, and mental health issues of depression and anxiety, there has been little treatment due to a lack of health insurance per hearing testimony," the ALJ reasoned: "Nevertheless, he has been able to have treatment despite a lack of insurance." AR 20 (citing treatment records from August 2018 through the hearing date in January 2021 (citing Exs. 1F–5F, 7F, 9F)). Thus, by showing that the Plaintiff was able to obtain treatment despite the lack of insurance, the ALJ inferred that the Plaintiff may have been able to obtain other necessary treatment but did not. In fact, in his brief, the Plaintiff underscores that he was on HIP (Healthy Indiana Plan) insurance. *See* AR 359; https://www.in.gov/fssa/hip/ am-i-eligible/ (last visited 3/16/2022). The Plaintiff also suggests he may not have gotten treatment when he stopped seeing psychologist Dr. Reichenbach because Dr. Reichenbach did not treat the Plaintiff appropriately due to the Plaintiff being transgender. *See* AR 63–64; 279– 96. However, the ALJ noted not only Dr. Reichenbach's treatment notes from 2018 but also that the Plaintiff was subsequently treated by Kimberly Loney, LMHC, from November 2018 through September 2019, but also missed several appointments. AR 21, 306–31 (Ex. 4F).

Second, the Plaintiff suggests that his anxiety and panic attacks, which led to a suicide attempt, may have contributed to the lack of further care. *See* AR 215–36, 347–52. The Plaintiff reported to consultative examiner Dr. Coulter-Kern in October 2019 that he worked at Walmart for less than a week and left the job because he felt overwhelmed and attempted suicide. AR 348. His mother also testified that he was hospitalized for about a week for a suicide attempt after working at Walmart in 2018. AR 53–54. As noted by the Commissioner, the record does not

contain any treatment records for the attempt. Nevertheless, the ALJ found that the Plaintiff should have greater social restrictions, noting that the Plaintiff's "mother testified the claimant decompensated when working for Walmart for one week, in part because of the anxiety of having a line as a cashier." AR 21. As a direct result of that testimony, the ALJ included a limitation to no contact with the public and only occasional contact with supervisors and coworkers. AR 19, 21. Thus, the ALJ considered the testimony and incorporated it in the decision.

Third, the Plaintiff argues that the ALJ erred in disbelieving the Plaintiff because the state agency reviewing psychologists answered "yes" to the question: "Are the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms substantiated by the objective medical evidence alone?" AR 82. Yet the Plaintiff offers no legal authority that this checkbox answer on the RFC form directs a finding of disability or trumps the ALJ's duty to consider all the categories of evidence in assessing the Plaintiff's subjective symptoms. *See* 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304; *see also* 20 C.F.R. § 416.920c(a) (providing that the ALJ does not "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s)" but rather considers them along with the other factors in 20 C.F.R. § 416.920c(c)(1)–(5)); *Michelle P. v. Kijakazi*, No. 1:21-cv-2529, 2022 WL 17581809, at *7 (S.D. Ind. Sept. 26, 2022) (rejecting a similar argument, finding that neither SSR 16-3p nor 20 C.F.R. § 404.1529 expressly states that the medical consultant's "yes" answer to the checkbox question concludes the disability determination or directs a finding of disability). Notably, notwithstanding this checkbox, the state agency reviewing psychologists opined that the Plaintiff's allegations of symptoms appear consistent as supported by the medical evidence of record but that "in terms of level of severity of functioning [the Plaintiff's]

allegations appear partially consistent." AR 101. They then opined as to the Plaintiff's abilities, which are consistent with the ALJ's RFC.

Finally, the Plaintiff argues that the ALJ did not consider all of his mother's third-party statements. *See* 20 C.F.R. § 416.945(a)(3) (providing that the ALJ will consider "observations" by other persons in formulating the RFC); SSR 16-3p, 2017 WL 5180304, at *4 (same). However, the Plaintiff does not identify any of his mother's statements that the ALJ failed to consider. The Court finds that the ALJ properly considered the relevant factors in assessing the Plaintiff's subjective symptoms and his mother's testimony and discussed the relevant evidence of record. Remand is not appropriate on this issue.

## B.      State Agency Reviewing Psychologists' Opinions

In reviewing a disability claim, an ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 416.920c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 416.920c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id*. § 416.920c(a), (b)(2). Therefore, the ALJ must explain how the ALJ considered those two factors in making the disability decision. *Id*. § 4160.920c(b)(2). However, the ALJ may, but is not required to, explain how the ALJ considered the remaining three factors. *Id.*

9

The Plaintiff argues that the ALJ erred in rejecting consultative examiner Dr. Coulter-Kern's opinion and in relying instead on the state agency reviewing psychologists' opinions both at step three and in formulating the RFC. Specifically, the Plaintiff contends that the state agency reviewing psychologists' opinions were "incomplete," and thus, unsupported. *See, e.g.*, *Pavlicek v. Saul*, 994 F.3d 777, 783–84 (7th Cir. 2021) ("An ALJ must not rely on a physician's assessment 'if later evidence containing new, significant medical diagnoses reasonably could have changed' the physician's views." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018))); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (finding that the ALJ erred by not adequately explaining why the opinions of a state agency psychiatrist and psychologist were entitled to greater weight when they did not have access to subsequently created medical records from a treating psychiatrist). The Plaintiff identifies four pieces of evidence he contends the state agency reviewing psychologists did not consider.

First, the Plaintiff suggests that the state agency psychologists did not address consultative examiner Dr. Coulter-Kern's (1) examination findings showing a lack of orientation to place, restlessness, confusion, nervous mood and affect, inability to recall only one of three words after five minutes, inability to complete basic calculations or serial 3s, and significant difficulty understanding questions and (2) opinion that the Plaintiff has only a fair ability to manage his own affairs without assistance. *See* AR 374–81. This argument is belied by the record.

Dr. Coulter-Kern conducted a consultative examination on October 26, 2019, AR 347–51 (Ex. 6F), and a second consultative examination on December 4, 2019, AR 374–81 (Ex. 8F). The administrative record shows that the reports of both evaluations were part of the evidence of record before the state agency psychologists and that both psychologists reviewed and discussed those records. *See* AR 76–77, 92 ("evidence of record"), 80–81 (initial review, 12/9/2019), 100–

10

01 (review on reconsideration, 2/27/2020). In fact, the state agency psychologists recited most aspects of Dr. Coulter-Kern's examination findings listed above by the Plaintiff—namely that the Plaintiff was only "oriented x2" (meaning he lacked orientation to place), "motor behavior was restless," "thought processes were frequently confused," "the client appeared to have significant difficulty understanding the questions," and "[t]he client described mood as 'nervous.'" AR 80. They also addressed Dr. Coulter-Kern's October 2018 opinion that the Plaintiff's "ability to manage his/her own affairs without assistance appears to be poor." AR 80; *see* AR 350 ("poor," 10/26/2019), 375 ("fair," 12/2018). Moreover, the state agency psychologists found that Dr. Coulter-Kern's first medical source statement from October 26, 2019, in which he found that the Plaintiff will have "significant difficulty" in all areas, AR 351, was "not consistent with nor supported by the totality of the evidence," AR 85, 100. The Plaintiff does not acknowledge or challenge this finding.

Second, the Plaintiff contends that the state agency psychologists did not address two exam records showing "blunted affect." *See* AR 282, 292 (Ex. 2F). On August 29, 2018, Dr. Reichenbach reported on examination: "Psychiatric: Her behavior is normal. Her affect is blunt." AR 282. On September 21, 2018, Dr. Reichenbach reported: "Psychiatric: She has a normal mood and affect. Her speech is normal and behavior is normal. Judgment and thought content normal. Cognition and memory are impaired (mild). Affect is a little bit blunted." AR 292. These records were part of the "evidence of record" before the state agency psychologists, *see* AR 78 (PPG Manchester Clinic), and these records were included in the "findings of fact," AR 79. Although the finding of "blunt affect" was not specifically listed by the state agency psychologists, the Plaintiff has not explained how it may have changed their opinions. The state agency psychologists specifically considered the diagnoses by Dr. Coulter-Kern, a year after Dr.

Reichenbach's reports, of "Major Depressive Disorder, recurrent, moderate," "Generalized

Anxiety Disorder", and "Social Anxiety Disorder R/O Neurocognitive Disorder." AR 80.

Third, the Plaintiff contends that the state agency psychologists did not address "the

impact of Plaintiff's seizures and medications on his mental functioning," Pl. Br. 10, but the

Plaintiff does not cite any record evidence in support.

Finally, the Plaintiff argues generally that the state agency psychologists did not address

his mother's statements of significant limitations due to his seizure disorder, memory issues, and

social anxiety, citing the September 6, 2019 seizure questionnaire. *See* AR 215–26 (Ex. 4E).

Once again, both the September 6, 2019 seizure questionnaire (Ex. 4E) and the September 6,

2019 third party adult function report (Ex. 5E) completed by his mother were part of the

"evidence of record" before the state agency psychologists. *See* AR 77. In addition, the state

agency psychologists accurately summarized the Plaintiff's activities of daily living as "Use

computer, care for hygiene, clean, shop online, read, socialize with family. Does not get along

with others. Concentration issues but pays attention 2 hours. Does not follow instructions well.

Gets along with authority. Dislikes changes. Sleeps when stressed. Cannot go out alone due to

seizures." AR 85–86; *see also* AR 79–80. The Plaintiff does not acknowledge or dispute this

summary.

The Court finds that the ALJ properly considered the opinions of record under 20 C.F.R.

§ 416.920c and provided a sufficient explanation of their persuasiveness. The ALJ found the

state agency psychologists' opinion consistent with the evidence and, thus persuasive. AR 21.

The ALJ found Dr. Coulter-Kern's first opinion of "significant difficulty" in all areas not

consistent with the record but found the second opinion of "some difficulty" in most areas and

"significant difficulty" in coping with work pressures "slightly more persuasive." *Id.* The

Plaintiff does not challenge the ALJ's reasoning for these findings other than the unavailing

12

arguments above. In addition, the ALJ found the Plaintiff more limited than did the state agency psychologists, adding (1) the limitation of no contact with the public and occasional contact with supervisors and coworkers based on his mother's testimony regarding his experience at Walmart and additional mental health records and (2) the limitation of no exposure to heat supported by subsequent evidence of record. *See* AR 21. The Plaintiff has not cited any evidence that was created after the state agency reviewing psychologists' opinions or argued how any records received after the reconsideration level may have changed the opinions. *See* AR 382–406. Notably, all of the subsequent records are from Kimberly Loney, LMHC, in which she finds that the Plaintiff presented with an "appropriate" affect. *See* AR 386, 389, 391, 394, 400, 404. Thus, the Plaintiff has not demonstrated that there was an evidentiary deficit that may have prompted the ALJ to exercise her discretion to obtain any additional consultative evaluations. *See* 20 C.F.R. § 416.919a(b); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Remand is not required in relation to the opinion evidence.

## C.    Step Three Determination on Mental Impairments—Listings 12.04 and 12.06

At step three of the sequential analysis, the ALJ found that the Plaintiff's mental impairments do not meet or medically equal listings 12.04 ("Depressive, bipolar and related disorders") and 12.06 ("Anxiety and obsessive-compulsive disorders"). AR 18–19. A claimant can be found disabled under either listing by satisfying the A and B criteria or the A and C criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. The ALJ found that the Plaintiff did not satisfy either the B or C criteria, AR 18–19, and the Plaintiff challenges both findings.

1.      *"Paragraph B" Criteria*

To satisfy the "paragraph B" criteria, the Plaintiff's mental impairments must result in one "extreme" limitation or two "marked" limitations in the paragraph B areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2). A "moderate" limitation is defined as: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00F(2)(c). A "marked" limitation is defined as: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00F(2)(d). And, an "extreme" limitation is defined as: "You are not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00F(2)(e). The ALJ found that the Plaintiff had only "moderate" limitations in each of the four areas of functioning. AR 18–19. The Plaintiff contends that greater limitations are supported by his mother's statements, abnormal exam findings by consultative examiner Dr. Coulter-Kern, and his treatment history.

First, for understanding, remembering, and applying information, the ALJ recognized that the Plaintiff alleges difficulty remembering generally, following instructions, and completing tasks but noted that the Plaintiff agrees he can take medications, shop, read, and play games. AR 18. The Plaintiff argues that this is an insufficient explanation, again pointing to Dr. Coulter-Kern's findings discussed above and his finding of "some difficulty understanding, remembering, and carrying out instructions." AR 375. Dr. Coulter-Kern's finding of "some difficulty" is consist with the ALJ's finding of a "moderate limitation," given that a "marked" limitation would require that the ability to function in this area on a sustained basis be "seriously" limited. The Plaintiff also notes that he was unable to answer simple questions about his medical history at the hearing, AR 35–48, that he has only a ninth-grade education, AR 42, 194, and that his mother testified that he has a poor memory and cannot perform simple math

14

calculations. However, the Plaintiff has not shown that this evidence supports a greater limitation than found by the ALJ in this functional area, which is also supported by the state agency psychologists' findings. *See* AR 81, 96.

Second, for interacting with others, the ALJ recognized the Plaintiff's allegation that he has difficulty engaging in social activities and getting along with others but also recognized that the Plaintiff can shop, spend time with family and friends, deal appropriately with authority, and live with others. AR 19. The Plaintiff argues that this finding ignores (1) the diagnoses of major depressive disorder, generalized anxiety disorder, and social anxiety disorder, (2) exams showing blunted and nervous affect and mood, (3) Dr. Coulter-Kern's conclusion that the Plaintiff would have "at least some" difficulty responding appropriately to supervision and coworkers in a work setting, and (4) reports that he suffers from depression, guilt, irritability, panic attacks, social anxiety, and feelings of worthlessness, mostly stays home, interacts only with family, and has social anxiety as a result of his seizure disorder. Again, Dr. Coulter-Kern's opinion that the Plaintiff would have "at least some" difficulty in this area is consistent with the ALJ's finding of a "moderate" limitation, again because a "marked" limitation would require that the ability to function in this area on a sustained basis be "seriously" limited. The ALJ's finding is also consistent with the state agency psychologists' finding based on the same evidence. *See* AR 81, 96.

Third, in the functional area of the ability to concentrate, persist, or maintain pace, the ALJ recognized the Plaintiff's allegation that he has limitations in concentrating generally, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule but also found that the Plaintiff said he is able to watch TV, read, and play games. AR 19. The Plaintiff argues that the ALJ did not properly explain how the evidence supports only a moderate limitation in this functional area. The Plaintiff notes that "[t]his area of mental

functioning refers to the abilities to focus attention on work activities and stay on task at a

sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(3). The Plaintiff suggests that it

is unknown how long he can watch television, read, and play games without getting headaches,

citing his adult function report, AR 227–36. However, there is only one reference in the report to

headaches, which is in his answer to how often he does his hobbies and interests: "I would be

able to do them all day, but now I get headaches, sweats, get nervous, but still able to do them

once those calm down after a few hours go by." AR 233. Moreover, the ALJ found that the

Plaintiff can pay attention in two-hour segments, AR 19, which comes from the same adult

function report, AR 233, 234. The Court will not reweigh the evidence. *See Stephens v.

Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) ("[A]lthough this Court reviews the record as a

whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or

reweighing the evidence to decide whether a claimant is in fact disabled."). Once again, Dr.

Coulter-Kern's opinion that the Plaintiff would have "at least some" difficulty in this functional

area is consistent with a "moderate" limitation. And, the state agency psychologists found only

moderate limitations in this functional area. *See* AR 81, 96.

Finally, in the functional area of the ability to adapt or manage himself, the ALJ noted the

Plaintiff's allegation that he has difficulty managing his mood but also that he testified he is able

to handle self-care and personal hygiene and get along with caregivers. AR 19. The Plaintiff

notes that "adapting or managing oneself" refers to the ability to regulate emotions, control

behavior, and maintain well-being at work. § 12.00(E)(4). The Plaintiff contends he cannot meet

these demands on a sustained basis. However, much of the evidence the Plaintiff cites is related

to previous physical limitations related to his seizures. *See* Pl. Br. 16–17. And, the ALJ found

that the record showed that, with medication adjustments, the Plaintiff seizures were under

control. AR 21; AR 343–44 (Ex. 5F). The Plaintiff does not contest that finding. In addition, Dr.

16

Counter-Kern's opinion that the Plaintiff would have "at least some" difficulty coping appropriately with work pressures is again consistent with a "moderate" limitation. And, in his December 2018 report, Dr. Coulter-Kern opined that the Plaintiff has a "fair" ability to manage his own affairs without assistance. A "fair" limitation is consistent with the definition of a "moderate" limitation. 12.00F(2)(c). Notably, the state agency psychologists found that the Plaintiff had only a "mild" limitation in this functional area. *See* AR 81, 96.

In addition, the ongoing mental health treatment records indicate that the Plaintiff was doing okay overall and progressing. AR 329 (8/19/2019). Therapy notes from September and November 2019, October and November 2020, and January 2021 generally found that he was pleasant and talkative and was doing okay. AR 386, 389, 391, 394, 400, 404. The records also found he was oriented/alert, had intact functional status, euthymic mood, appropriate affect, and was interactive. AR 329, 386, 389, 391, 394, 400, 404. In his reply brief, the Plaintiff contends generally that the ALJ failed to consider evidence favorable to him but does not identify any such evidence. For all these reasons, the Plaintiff has not demonstrated that the objective therapy notes and his activities support two marked or one extreme limitation in the "paragraph B" criteria, and remand is not required on this issue.

2.    *"Paragraph C" Criteria*

As an alternative to the "paragraph B" criteria, the "paragraph C" criteria of Listings 12.04 and 12.06 require that the Plaintiff's disorder be (1) "serious and persistent" (more than two years), with (2) ongoing medical treatment, mental health therapy, psychosocial support, or a highly structured setting that diminishes symptoms of the disorder, and (3) evidence of marginal adjustment (minimal capacity to adapt to changes and demands not part of daily life). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(G)(2), 12.04(C), 12.06(C). In considering the "paragraph C" criteria, the ALJ found that the Plaintiff did not (1) have any episodes of decompensation, (2) "a

17

residual disease process that results in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate," or (3) a history of one or more years' inability to function outside a highly supportive living arrangement. AR 19.

The Plaintiff argues that his anxiety is serious and persistent because it has existed for more than two years, AR 215–26; he has continued to receive psychosocial support and benefit from a highly structured setting, which he describes as living with his mother who provides daily support, encouragement, reminders, and transportation and facilitates his medical appointments; and he has had abnormal exams. As argued by the Commissioner, while it is correct that the Plaintiff has a history of mental disorders for a period of at least two years, he has not identified evidence of both the second and third requirements of the "paragraph C" criteria. While the Plaintiff has received ongoing mental health therapy, the record does not support a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. As discussed above, the treatment records do not indicate that his mental impairments had a significant impact on his functioning as required for the "paragraph C" criteria. Thus, this is not a basis for remand.

**D.     The Mental RFC Determination**

In this last argument, the Plaintiff contends that certain aspects of the mental RFC determination are unsupported by the record and, as a result, the hypothetical posed to the vocational expert did not contain all the Plaintiff's limitations as supported by the record. The RFC is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5

days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)).

First, the Plaintiff contends that the limitations to work that can be learned in 30 days or less with simple routine tasks and to routine workplace changes and simple work-related decisions do not adequately address his moderate limitations in concentration, persistence, and pace. Without any analysis of the evidence, the Plaintiff cites cases for the principle that a limitation to "simple, routine, and repetitive tasks" refers to unskilled work, which indicates the amount of time it takes to learn a job rather than how long an individual can sustain concentration. *See, e.g.*, *Martin v. Saul*, 950 F.3d 369, 373–74 (7th Cir. 2020) ("[S]omeone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be."); *Varga*, 794 F.3d at 814–16 (noting that the limitation to "simple, routine, and repetitive tasks" goes to whether work can be learned rather than temperamental deficiencies and limitations in concentration, persistence, or pace). However, in this case, the Plaintiff indicated in his adult function report that he can read, write, play the piano/computer for "a good few hours," AR 233, and that he can pay attention for two hours at a

time, AR 234. This is not an instance in which the ALJ improperly equated simple work with an ability to concentrate. Here, these limitations properly account for the Plaintiff's moderate limitations, and the Plaintiff has not shown otherwise. *See, e.g.*, *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) ("Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrate psychological symptoms' found in the record" (quoting *Jozefyk*, 923 F.3d at 498)). Here, the ALJ considered the Plaintiff's blunted affect, mild impairment in cognition and memory, and the grief from the loss of his sister. AR 21.

Next, the Plaintiff contends that there is no evidence he can perform even simple, routine tasks on a sustained basis in light of his anxiety and seizure disorder. As for the effects of his seizure disorder, the Plaintiff again does not challenge the ALJ's finding that his seizure disorder had come under control with medication adjustments. *See* AR 21; AR 343–44 (Ex. 5F). The Plaintiff attempts to equate his memory issues with an inability to remember simple, routine tasks without retraining; however, he cites no evidence to support this supposition.

The Plaintiff also argues that the restriction to routine workplace changes and simple work-related decisions is not connected to any evidence, arguing that his anxiety would lead to at least moderate if not marked to extreme limitations in adapting and managing himself. As discussed above, even Dr. Coulter-Kern found only that the Plaintiff had "at least some difficulty copying appropriately with work pressures." But, this limitation does not translate to the marked or extreme limitation proposed by the Plaintiff, and the Plaintiff has not identified other evidence to show he cannot perform this work. *See, e.g.*, *Pate v. Kijakazi*, No. 20-3207, 2021 WL 3627118, at *3 (7th Cir. Aug. 17, 2021) (finding that, contrary to the cited case law, the plaintiff did not identify evidence suggesting an inability to perform simple tasks on a sustained basis).

Next, the Plaintiff argues that the ALJ did not sufficiently account for the possibility of off-task behavior and absenteeism, citing *Lothridge v. Saul*, 984 F.3d 1227, 1234–35 (7th Cir. 2021). In support, the Plaintiff references his mother's report that he has depression most days, low energy, difficulty concentrating, excessive worry, restlessness, fatigue, panic attacks, lack of motivation, an inability to pay attention longer than 10 to 15 minutes, and napping 3 to 4 hours a day. However, as discussed above in the first section, the ALJ did not find the extent of these limitations supported by the record, and the Plaintiff has not shown that the ALJ erred in this assessment. Again, the Plaintiff reported that he could concentrate for two hours at a time. The vocational expert testified that work would be precluded if the Plaintiff were off task more than 15 percent of the workday or would be absent one or more times a month on an ongoing basis, AR 69; the Plaintiff has not identified evidence supporting either limitation in this case.

Finally, the Plaintiff contends that the ALJ did not explain how she determined that the Plaintiff can occasionally interact with coworkers and supervisors in light of evidence that he struggles to interact with others outside his family and familiar healthcare providers. This RFC finding is supported by Dr. Coulter-Kern's opinion that the Plaintiff would have at least some difficulty responding appropriately to supervision and coworkers in a work setting, AR 374–81, and the state agency reviewing psychologists' opinion that the Plaintiff can relate on a superficial basis with coworkers and supervisors, would work best alone in semi-isolation or as part of a small group, and "seems to be able to maintain at least a minimal level of relationship with others." AR 84–86, 99–101. The Plaintiff does not identify evidence supporting greater limitations.

The Court finds that the mental RFC reflects the Plaintiff's mental impairments and is supported by substantial evidence and that the ALJ sufficiently articulated the reasoning behind the RFC. Remand is not required on the RFC determination.

**CONCLUSION**

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief [ECF No. 13] and AFFIRMS the decision of the Commissioner of the Social Security Administration. The Court DIRECTS the Clerk of Court to ENTER JUDGMENT against the Plaintiff Kimberly Grayson Hebein and in favor of the Commissioner of Social Security.

SO ORDERED on March 21, 2023.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT